# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **CRIMINAL NO. 07-CR-557** |
| ) | |
| NEAL D. SAFERSTEIN ) | |
| TYRONE L. BARR ) | |
| BILLY D. LIGHT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                     **November 18, 2008**

This is a telecommunications fraud action in which Defendants Neal D. Saferstein, Tyrone L. Barr, and Billy D. Light have been charged by the United States with eight counts of wire fraud under 18 U.S.C. §§ 1343, 1349; 8 counts of mail fraud under 18 U.S.C. § 1341; one count of conspiracy to commit perjury under 18 U.S.C. § 371; four counts of filing a false tax return under 26 U.S.C. § 7206(1); and six counts of failure to pay over tax under 26 U.S.C. § 7202. Before the Court is the Government's Motion to Authorize Alternative Procedures for Crime Victim Notification Pursuant to 18 U.S.C. § 3771(d)(2),[1] Defendant Neal D. Saferstein's Response thereto,[2] as joined by Defendant Tyrone L. Barr,[3] and the Government's Reply.[4] Additionally, the Court held

---

[1] Doc. No. 86.

[2] Doc. No. 88.

[3] Doc. No. 93.

[4] Doc. No. 99.

a hearing regarding the pending Motion on August 16, 2008.[5] For the reasons that follow, the Government's Motion to Authorize Alternative Procedures for Crime Victim Notification will be granted.

I.      FACTUAL AND PROCEDURAL HISTORY

In 1997 GoInternet.net, Inc. ("GoInternet") began doing business as Mercury Marketing of Delaware, Inc. It was a Delaware corporation with an office address in Philadelphia, Pennsylvania.[6] Defendant Neal Saferstein served as the President, Chief Executive Officer and majority owner of GoInternet; Defendant Tyrone L. Barr as the Vice President of Customer Service and Regulatory Affairs; and Defendant Billy D. Light as Chief Information Officer.[7] GoInternet sold internet related services to companies and individuals, including dial-up internet access, e-mail accounts and Web page design.[8] The company employed telemarketers to sell its product to businesses around the country. If during a sales phone call a customer agreed to purchase GoInternet's services, the telemarketer detailed the sale using a verification script which was then recorded.[9] GoInternet then mailed the customer a "welcome package," after which a customer was required to call GoInternet and cancel within 15 days; otherwise the customer would be billed

---

[5] Transcript, Doc. No. 112.

[6] Indictment ¶ 1.

[7] Id. at ¶¶ 8-10.

[8] Id. at ¶ 1.

[9] Id. at ¶ 2.

approximately $29.95 per month.[10]  By 2003 GoInternet employed more than 1,000 telemarketers and was signing up 7,500 new customers a week, bringing in gross annual revenues of more than $49 million.[11]  However, GoInternet stopped doing business in 2004.[12]

The Government alleges that the entire GoInternet business was designed to defraud customers into paying for internet related services without their knowledge or authorization.[13]  Local telephone companies can permit third parties such as GoInternet to include charges for separately ordered telecommunications services on consumers' local telephone bills.[14]  To do this such third parties work with telephone billing "aggregators" who act as intermediaries between the third party and local telephone companies or Local Exchange Carriers ("LECs").  Aggregators receive billing information from the third parties, who are the aggregators' clients, and submit the bill to the appropriate LEC for inclusion on a customer's local telephone bill.[15]  When customers pay their telephone bills the aggregators collect the payment for their clients' services from the LEC.  Those payments are then passed back to the clients or third party providers who pay a fee for the aggregator's collection and billing services.[16]  The placement of unauthorized charges on a consumer's local telephone bill is known as "cramming," and the Government claims that GoInternet

---

[10] Id. at ¶ 4.

[11] Id. at ¶ 6 .

[12] Id.

[13] Id. at ¶ 18.

[14] Id. at ¶ 11.

[15] Id. at ¶ 12.

[16] Id. at ¶ 13.

contracted with several billing aggregators to place its monthly charges on customer's local telephone bills.[17]

The Government alleges that GoInternet was able to defraud thousands of customers into being billed without their direct knowledge by routinely failing to disclose the nature of GoInternet's services and failing to explain that agreeing to receive a welcome packet would trigger monthly payments bills unless the customer called to cancel.[18] Other alleged misrepresentations include designing the welcome packet to look like unsolicited mail so that it would be thrown away before read, providing "generic, bare-boned, and mistake-ridden Web sites," and using sub-domain web addresses for those Web sites, making them unavailable through major internet search engines.[19] Despite complaints about their services, GoInternet maintained insufficient telephone availability to handle complaint calls, delaying cancellations and refunds.[20]

On June 28, 2000, The Federal Trade Commission ("FTC") filed suit against Defendant Neal D. Saferstein for violating the law by billing customers without their authorization. The parties agreed to a Stipulated Judgment and Order for a Permanent Injunction.[21] However, the Government alleges that even after that Judgment was issued GoInternet continued to expand its fraudulent conduct. When an LEC would no longer post charges for GoInternet, the Government alleges that GoInternet hired an intermediary to submit the charges to the billing aggregator and LEC on

---

[17] Id. at ¶¶ 14-15.

[18] Id. at ¶ 19.

[19] Id. at ¶¶ 22-24.

[20] Id. at ¶ 28.

[21] Id. at ¶ 30.

GoInternet's behalf.[22] The Government further claims that Defendant Neal Saferstein ordered the destruction of thousands of postcards that would have notified GoInternet's customers that they were receiving and paying for GoInternet's services. Those postcards were required by the Consent Order ending the above referenced action by the FTC.[23] The Government alleges that as a result of GoInternet's ongoing billing scheme that the company fraudulently gained more than $75 million in revenues from March 2001 through April 2004.[24] An indictment was issued as to the three named Defendants and their actions regarding their involvement with GoInterenet on September 13, 2007.

### B. LEGAL STANDARD

On June 25, 2008 the Government filed the motion currently at bar which asks the Court to Authorize Alternative Procedures for Victim Notification Pursuant 18 U.S.C. § 3771(d)(2). The government argues, and the Court agrees, the 'multiple crime victims' provision set forth in 18 U.S.C. § 3771(d)(2) applies to the above captioned case and that "[because] the number of crime victims makes it impractical to accord all of the crime victims the rights described in 18 U.S.C. §3771(a) the court shall fashion a reasonable procedure to give effect to the chapter that does not unduly complicate or prolong the proceedings."[25] This portion of the Justice For All Act, which is referred to as the Crime Victims' Rights Act ("CVRA"), allows courts to approve efforts to notify victims of federal crimes who may not be aware that they suffered the effects of criminal activities the Government is prosecuting.

---

[22] Id. at ¶ 33.

[23] Id. at ¶ 34.

[24] Id. at ¶ 35.

[25] 18 U.S.C. § 3771(d)(2).

**II.    DISCUSSION**

The Government seeks to notify as many as 300,000 individuals who may have been victims of telecommunications fraud as part of the alleged cramming scheme orchestrated by the Defendants through GoInternet. Due to the sheer number of potential victims involved they seek approval for alternative methods of notification as laid out by the CVRA. Initially, the Government proposed continued publication in a major national newspaper as well as a Web site in an effort to alert potential victims who may not be aware that they are eligible to participate in the proceedings. Counsel for Defendants Saferstein and Barr objected to the Government's request arguing both that the Government had failed to meet its obligation to show that individual notification of victims was too burdensome and that any proposed public notification would prejudice a potential jury pool against the Defendants.

Both parties submitted briefs to the Court regarding these matters and a hearing was held on August 16, 2008. The initial position of Defendants' counsel was to reiterate his objections to any proposed public notification.  However, in the alternative that the Court should rule in favor of the Government, a number of issues relating to the specifics of any publication were resolved pending Court approval. Counsel for Defendants Saferstein and Barr and the Government agreed that the perjury and tax counts listed in the indictment would not be included in any press release because there are no victims to seek out related to those charges.[26]  The parties also agreed that any publicly disseminated information would make clear that the charges regarding GoInternet are disputed and include a statement of the "presumption of innocence."[27] Both sides agreed that it was acceptable to

---

[26] August 16, 2009 Hearing Transcript at 21:9-23.

[27] Id.

leave out the individual names of the Defendants in any public announcement to notify victims.[28] It was also agreed that any approved notification to victims would appear in *USA Today*, in conjunction with an interactive Web site, maintained by the U.S. Attorney's Office in the Eastern District of Pennsylvania. The Court informed the parties that it would find that the Government had met its burden of showing that the number of crime victims makes it impractical to accord all of the crime victims their rights.[29] However, the Court did not rule at that time whether the proposed methods, and proposed compromises between the parties discussed at the hearing, were "reasonable procedures" under the law.

Since the hearing, the Government has submitted to the Court a draft press release which includes the name of the company "GoInternet" and the titles of the individuals charged, but does not list the names of those individuals. The draft does not list each count on the indictment, but rather refers to "various counts of mail and wire fraud." Additionally, the last line of the release states "An indictment is an accusation. A defendant is presumed innocent unless and until proven guilty." The Court believes that these modifications to the press release properly reflect the compromises discussed at the hearing. Moreover, the Court's own inquiry into the questions of the appropriate methods of victim notification have convinced it that publication of a notice in a national newspaper in addition to an informational Government Web site carefully monitored by the Court, are indeed appropriate and efficient methods and therefore "reasonable procedures."

In the absence of guidance from the Third Circuit regarding what is a "reasonable procedure" under 18 U.S.C. § 3771(d)(2), the Court has consulted the decisions of the Second Circuit and the

---

[28] Hrg. Tr. at 38:5-13.

[29] Hrg. Tr. at 46:20-25.

Eastern District of New York, which have determined a number of notification efforts to be "reasonable" under the language of the Act. The Second Circuit has said that a determination of what is a "reasonable procedure" is left to the discretion of the district court. "Most of the rights provided to crime victims under the CVRA require an assessment of 'reasonableness.' The district court is far better positioned to make these assessments and to determine what constitutes a 'reasonable' procedure than a court of appeals."[30]

In United States v. Saltman[31] a district court within the Second Circuit found that a published notice directing victims to a Web site maintained by the U.S. Attorney's Office was "reasonable." Such notification efforts are nearly identical to what the Government proposes in the current case. Moreover, supported by the ruling of the Second Circuit in In Re Huff, a court of the Eastern District of New York has also acknowledged that the distinctiveness of each case plays a role in what a district court judge may decide is reasonable, "[t]hat courts differ in the application of alternative notification procedures to their respective cases is not surprising, given their proximity to the particular facts and needs of victims that will also likely vary with each case."[32]

In light of these guiding authorities and upon the Court's careful review of the particular facts and arguments of both the Government and Defendants in this case, the Court finds, in its discretion, that the victim notification proposals of the Government are reasonable. However, should issues emerge regarding those notification efforts, in particular the maintenance of the Web site, the Court

---

[30] In Re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 562-63 (2d Cir. 2005).

[31] United States v. Saltman, 2007 U.S. Dist. LEXIS 87044 *4 (E.D.N.Y. Nov. 27, 2007).

[32] United States v. Rubin, 558 F.Supp. 2d 411, 422 (E.D.N.Y. 2008).

may revisit this matter upon motion of either party or *sua sponte*.

**IV.     CONCLUSION**

The Court hereby grants Motion to Authorize Alternative Procedures for Crime Victim Notification. An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 07-CR-557 |
| ) | |
| NEAL D. SAFERSTEIN ) | |
| TYRONE L. BARR ) | |
| BILLY D. LIGHT, ) | |
|       Defendants. ) | |

### ORDER

**AND NOW,** this 18th day of November, 2008, upon consideration of Government's Motion to Authorize Alternative Procedures For Crime Victim Notification Pursuant to Title I of the Justice For All Act of 2004, 18 U.S.C. § 3771 [Doc. No. 86]; and Defendant Neal D. Saferstein's Response thereto [Doc. No. 88]; as joined by Defendant Tyrone L. Barr [Doc. 93]; the Government's Reply [Doc. No. 99]; and the hearing held on this matter August 16, 2008 [Transcript, Doc. No 112] it is hereby

      **ORDERED** that Plaintiff's Motion is **GRANTED**

The Government is authorized to comply with the provisions of 18 U.S.C. § 3771(a)(2) in the above captioned case by providing notice regarding this action in the newspaper *USA Today*, five times, once every other week, commencing the week of **January 5, 2009.** The notice will direct potential victims to a Web site maintained by the U.S. Attorney's Office in the Eastern District of Pennsylvania and available at http://www.usdoj.gov/usap/pae/.

The Court retains the right to monitor victim notification efforts and may revisit this matter upon motion of either party or *sua sponte*.

It is so **ORDERED**.

**BY THE COURT:**

**s/Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**