*CMR*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 07-CR-557 |
| | ) | |
| | ) | **FILED** |
| NEAL D. SAFERSTEIN, | ) | |
| TYRONE L. BARR | ) | APR 2 9 2009 |
| | ) | MICHAEL E. KUNZ, Clerk |
| | ) | By_____Dep. Clerk |
| Defendants. | ) | |

---

## MEMORANDUM OPINION AND ORDER

RUFE, J.                                                           April 28, 2009

In this indictment Defendants Neal D. Saferstein and Tyrone L. Barr have been charged by the United States with eight counts of wire fraud under 18 U.S.C. §§ 1343 and 1349 and eight counts of mail fraud under 18 U.S.C. § 1341. Saferstein has additionally been charged with one count of conspiracy to commit perjury under 18 U.S.C. § 371; four counts of filing a false tax return under 26 U.S.C. § 7206(1); and six counts of failure to pay over tax under 26 U.S.C. § 7202. Before the Court is Saferstein's Motion to Suppress,[1] in which Barr joins.[2]  Defendants request that the Court suppress evidence pursuant to warrants they allege lacked sufficient probable cause, the Government's Response[3], and Defendants' Reply[4]. The Court held a hearing regarding this matter

---

[1] See Doc. No. 78.

[2] See Doc. No. 79.

[3] See Doc. No. 89.

[4] See Doc. No. 98.

1

on March 3, 2009, for which Findings of Fact are detailed herein.

## I.   FINDINGS OF FACT

1.     Agent Edward Saks has been with the Federal Bureau of Investigation (FBI) for twenty-six years. Agent Saks assisted in the investigation of GoInternet commencing in 2004. He received additional information about GoInternet's business practices from the Federal Trade Commission regarding complaints about the company. He also received information from a telemarketer who had worked at GoInternet. Agent Saks served as the Bureau's primary investigator on the matter until Agent Robert Loughney took over the position sometime in 2006.

2.     Agent Saks acted as the affiant for two of the warrants issued as part of the Investigation against GoInternet. The first warrant was issued on October 27, 2004 to search 6, 8, and 10 Strawberry Street, Philadelphia, Pennsylvania.   The second was issued on issued on November 6, 2004 to search 20 North Third Street, Philadelphia, Pennsylvania. He presented both affidavits to Magistrate Judge M. Faith Angell, before whom he answered follow-up questions regarding the information in the affidavits. Magistrate Judge Angell signed both warrants.

3.     Agent Daniel L. Mulvihill works at the Federal Bureau of Investigation in Philadelphia, Pennsylvania.  He has been with the Bureau for almost twelve years and has been a special agent for nearly five years.  He and other special investigators assisted in the investigation of GoInternet, serving in a squad of between ten and fifteen individuals with Agent Robert Loughney as the primary investigator. Loughney and other investigators provided Mulvihill with  information about Go

Internet's business practices.

4.  Agent Mulvihill served as the affiant for two of the warrants issued in the investigation of Go Internet. The first was issued on April 12, 2006 to search 2625 Wheatsheaf Lane, Philadelphia. Pennsylvania. The second was also issued on April 12, 2006 to search a garage located between 2722 and 2724 Clearfield Street. Philadelphia, Pennsylvania. Both of those warrants were signed by Magistrate Judge Peter B. Scuderi.

5.  Agent Robert Loughney works at the Federal Bureau of Investigation in Philadelphia. Pennsylvania. He has been with the Bureau for twelve and a half years. He assumed the role of primary investigator of the squad assigned to the GoInternet case. In his role as primary investigator he shared information with Agent Daniel Mulvihill, who was working with the investigation squad. Additionally, he shared with and received information about GoInternet from the Federal Trade Commission, the Internal Revenue Service and the United States Postal Service.

6.  Agent Loughney acted as the affiant on four search warrants pursuant to the investigation of GoInternet. The first affidavit supported a warrant for the search of 20 Forest Court, Mount Laurel, New Jersey. The warrant was signed by Magistrate Judge Anne Marie Donio. The final three affidavits supported warrants to seize and search a laptop computer, Apple iPhone, and Apple iPod. All three of those warrants were signed by Magistrate Judge M. Faith Angell on October 10, 2007.

3

## II.   FACTUAL AND PROCEDURAL HISTORY

Defendants Saferstein and Barr are charged with orchestrating a "cramming" scheme via a business known as GoInternet.net, Inc. ("GoInternet").[5]   Saferstein served as the President, Chief Executive Officer and majority owner of GoInternet.[6]  Barr served as the Vice President of Customer Service and Regulatory Affairs.[7]  GoInternet sold internet related services to companies and individuals, including dial-up internet access, e-mail accounts and Web page design.[8] In 2003, GoInternet employed more than 1,000 telemarketers and brought in gross annual revenues of more than $49 million.[9] GoInternet stopped doing business in 2004.[10]

The Government alleges that GoInternet was designed entirely to defraud customers into paying for internet related services without their knowledge or authorization.[11]  Local telephone companies may permit third parties such as GoInternet to include charges for separately ordered telecommunications services on consumers' local telephone bills.[12]  Such billing is accomplished by the third parties working with telephone billing "aggregators" who act as intermediaries between the third party and local telephone companies or Local Exchange Carriers ("LECs").  Aggregators

---

[5] Indictment ¶ 1. [Doc. No. 1].

[6] Id. at ¶¶ 8-10.

[7] Id. at ¶¶ 8-10.

[8] Id. at ¶ 1.

[9] Id. at ¶ 6 .

[10] Id.

[11] Id. at ¶ 18.

[12] Id. at ¶ 11.

4

receive billing information from the third parties, who are the aggregators' clients, and submit the bill to the appropriate LEC for inclusion on a customer's local telephone bill.[13] When customers pay their telephone bills the aggregators collect the payment for their clients' services from the LEC. Those payments are then passed back to the clients or third party providers who pay a fee for the aggregator's collection and billing services.[14]   The placement of unauthorized charges on a consumer's local telephone bill is known as "cramming." The Government claims that GoInternet contracted with several billing aggregators to place its monthly charges on customer's local telephone bills.[15]

On June 28, 2000, the Federal Trade Commission ("FTC") filed suit against Saferstein for violating the law by billing customers without their authorization. The parties agreed to a Stipulated Judgment and Order for a Permanent Injunction.[16] However, the Government alleges that even after that Judgment was issued GoInternet continued to expand its fraudulent conduct. When an LEC would no longer post charges for GoInternet, the Government alleges that GoInternet hired an intermediary to submit the charges to the billing aggregator and LEC on GoInternet's behalf.[17] The Government further claims that Saferstein ordered the destruction of thousands of postcards that would have notified GoInternet's customers that they were receiving and paying for GoInternet's services. Notification to customers via postcard was required by the Consent Order in the above

---

[13] Id. at ¶ 12.

[14] Id. at ¶ 13.

[15] Id. at ¶¶ 14-15.

[16] Id. at ¶ 30.

[17] Id. at ¶ 33.

referenced action.[18] Saferstein and other members of GoInternet faced civil contempt proceedings for their failure to comply with that Consent Order, leading to additional investigation of GoInternet.[19]

In 2004, the FBI began investigating Defendants' business practices, along with the U.S. Attorney's Office, the IRS and the U.S. Postal Inspection Service. An indictment was issued against three Defendants on September, 2007 listing eight counts of wire fraud under 18 U.S.C. §§ 1343 and 1349, and eight counts of mail fraud under 18 U.S.C. § 1341. Additionally charged was one count of conspiracy to commit perjury under 18 U.S.C. § 371; four counts of filing a false tax return under 26 U.S.C. § 7206(1); and six counts of failure to pay over tax under 26 U.S.C. § 7202 against Saferstein. Through his counsel, Saferstein submitted and Barr joined a Motion to Suppress the evidence procured during the execution of seven separate search warrants.[20]

The first warrant was issued in October, 2004 for a search of the former business premises of GoInternet. Next came a warrant to search Defendant Saferstein's home in Mt. Laurel, NJ in April, 2006, and was quickly followed by two other warrants to search separate storage facilities located in Philadelphia, PA. The final three warrants were issued in October, 2007 for the search of Defendant Saferstein's laptop, iPhone and iPod. The Government's Response includes one additional 2004 warrant, which was not listed in Defendants' Motion to Suppress due to the Government's inadvertent failure to provide it in discovery.[21] The Government has since

_____

[18] See supra n. 16.

[19] Id. at ¶ 34.

[20] See Mot. To Suppress [Doc. No. 78].

[21] See Govt. Resp. p. 6 n. 1 [Doc. No. 89].

ameliorated the omission and the Court will consider all eight warrants as part of the current Motion to Suppress.[22]

Defendants allege that (1) the warrants lacked reliable sources; (2) that the affidavits drew incorrect inferences; and (3) that supporting affidavits offered to support the 2006 warrants were stale. In opposition, the Government maintains that none of these arguments overcome the "totality of the circumstances" standard that magistrate judges observe when deciding whether a warrant contains sufficient probable cause. In the alternative, it argues that even if Defendants are able to successfully show that the warrants lacked probable cause, the evidence is admissible under the "Good Faith Exception," since the officers who executed a search warrant acted in reasonable reliance on the warrant's authority.

## III.    LEGAL STANDARD

"Probable cause is determined by a 'totality-of-the-circumstances analysis,' under which a magistrate judge must 'make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[23]

Over the past several decades the Supreme Court has changed the standard to determine whether an affidavit supporting a warrant which contains information provided by others meets the standard of probable cause. While the original standard for determining an informant's

---

[22] Before the Government presented the eighth warrant, Defendant Barr filed a separate Motion to Suppress Physical Evidence found during an October, 2004 search of GoInternet premises at 20 North Third Street, Philadelphia, PA on the grounds that no warrant for the search existed [See Doc. No. 72]. Since that time the Government has submitted that warrant in discovery and explained the oversight, causing Defendant Barr to withdraw the Motion [See Doc. 109].

[23] United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

reliability was a "totality of the circumstances,"[24] the High Court then shifted to a preference for finding probable cause based on an assessment of the informant's "reliabilty," "veracity," and "basis of knowledge." But, that criteria was abandoned in favor of a reaffirmation of "totality of the circumstances" standard, set forth in Illinois v. Gates.[25] This is the standard the Court abides by today and that is applied by the Third Circuit, "Gates requires that a court considering the sufficiency of an agent's affidavit look at the "totality of the circumstances," and, in employing this flexible standard, the Supreme Court has explained that the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[26]

Furthermore, "a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found."[27] Courts are instructed to defer to the ruling of the magistrate judge. "The resolution of doubtful or marginal cases in this area should be largely determined by the deference to be accorded to warrants."[28]

IV.    DISCUSSION

---

[24] See Jones v. United States, 362 U.S. 257 (1960).

[25] See Illinois v. Gates 462 U.S. 313, 288 (1983)."We reaffirm the totality-of the-circumstances analysis that traditionally has informed probable cause determinations."

[26] U.S. v. Ritter, 416 F.3d 256, 262 (3d Cir. 2005).

[27] Id.

[28] United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents, 307 F.3d 137, 146-147 (3d Cir. 2002).

8

Saferstein and Barr request that the evidence found in the execution of each of the eight warrants in question be suppressed at trial. The affidavits supporting the warrants in question are nearly identical in nature and were used to support warrants issued over a three year period. Defendants argue that the affidavits supporting the warrants lacked direct sources, that affidavits drew incorrect inferences, and that the supporting affidavits contained stale information. The Court addresses each of Defendants' arguments in turn.

### A. The sources provided in the affidavits supporting the warrants were reliable.

Defendants' first argument is that each of the affidavits in question lacks reliable sources, claiming in particular that the information contained in the affidavits had been relayed to the affiants from other government sources and unnamed witnesses who had offered unreliable information.[29]

Each of the affiants testified at the hearing regarding the Motion to Suppress. All agents with the Federal Bureau of Investigation, each affiant testified that several government entities and their investigators were working in conjunction with each other and that the affidavits were the result of a collaborative effort.[30] Defendants claim that this sharing of investigatory duties is one way in which the warrants' supporting affidavits lacked direct information and therefore lacked probable cause. Defendants also stress that the warrants fail to verify in any way that "Confidential Witness" (CW) 1 and 2, individuals from whom the affiants received information,

---

[29] "The affiants themselves are not even the appropriate sources for information in their sworn affidavits, but simply regurgitate what appear to be nothing but summaries from other, unnamed individuals." Def. Mot. P. 19.

[30] See "I was not the primary investigator on this case. I assisted in this case and the information was gathered by the primary investigators on it. I took their information and swore to it." Test. of Agent Mulvihill, Hr'g Tr. 97:14-18.

are reliable sources.

It is well founded that an affidavit may be supported by hearsay. "An affidavit need not reflect the direct personal observations of the affiant."[31] The additional investigators and CWs 1 and 2 were identified in the warrants' supporting affidavits as the sources for the affiant's information. Moreover, the affiants provided the magistrate judges with information regarding the sources from which the confidential witnesses gained the information they were supplying. With specific reference to information provided by other investigators, the affidavit supporting chronologically the first warrant, issued in October 2004, and used as a base for the subsequent warrants, states, "Affiant has spoken at length with FTC investigators regarding GoInternet and Saferstein. According to the FTC, thousands of consumer complaints have been filed against GoInternet . . . . "[32] With regard to the confidential witnesses, CW1 is identified as a former telemarketer who worked for GoInternet in the summer of 2001 and is able to corroborate the details of complaints from former GoInternet customers. She offered a detailed description of her job, including her understanding that she was meant to push welcome packets and speak to secretaries, not business owners when making her sales pitch.[33] CW2 is identified as someone in a position to have direct knowledge of GoInternet's business practices who provided detailed knowledge about the floor plan of GoInternet buildings and where specific documents and files were maintained.[34]

---

[31] Aguilar v. Texas, 378 U.S. 108, 114 (1964) (overruled on other grounds).

[32] See Aff. Supporting October 2004 Warrant ¶ 43.

[33] See id. at ¶ 19.

[34] Id. at 53.

The circumstances that put these informants in a position to have knowledge of GoInternet's practices are described, although CW1 is identified more definitively than CW2. Regardless, it is all the information provided to the magistrate judge taken in concert that governs his or her decision whether an affidavit demonstrates probable cause and, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."[35] The affidavits also included information provided by a number of named individuals including an attorney with knowledge of the business practices in question[36] and the named former Chief Financial Officer of GoInternet.

The Court finds that the magistrate judges considering each of the eight nearly identical affidavits had probable cause to issue each warrant. In light of the "totality of the circumstances" standard, that the magistrate judges were provided with the results of not one but four federal agencies' investigation of the business practices of GoInternet, their individual and shared findings along with corroborative evidence by additional sources, both confidential and identified, the Court finds that there is sufficient reliability to provide credible evidence in support of probable cause to issue the warrants.

**B.    The broad conclusions and inferences included in the affidavits do not affect a finding of probable cause.**

Defendants argue that the warrants in question lacked probable cause because they drew incorrect inferences related to GoInternet's business practices. "[E]ven if there were indicia of reliability provided for the factual assertions in the affidavits, those assertions do not support the

---

[35] Gates, 462 U.S. at 233.

[36] See Aff. Supporting October 2004 Warrant, ¶ 51-52.

affiant's very broad conclusions about the commission of crimes."[37] Defendants point out that one of these broad assertions is that while the sources cited in the affidavits mentioned the thousands of alleged complaints against GoInternet, those same sources fail to mention the number of GoInternet customers who had not lodged complaints.[38]  Defendants also cite allegations from former GoInternet customers who were sent "welcome packets" and only canceled GoInternet's services after noticing extra charges on the customers' phone bill as facts from which the affiants drew incorrect conclusions.  Defendants argue that the source does not complain of having trouble reaching GoInternet to cancel service and that a refund was in fact issued.[39]

Defendants are correct that such statements are mere allegations from which a number of conclusions can be drawn.  However, the question that the magistrate judges had to consider, and that this Court must now ask, is whether such information provided an "indicia of probability" that criminal activity had been afoot and that a search would produce evidence of such activity.

The affidavits cited several sources claiming that thousands of complaints had been lodged against GoInternet, creating an indicia of probability that evidence of wrongdoing would be found, no matter how many happy customers GoInternet may or may not have had. "The focus should be on what the affidavit includes, rather than on what it does not include."[40] Additionally, the charges against Saferstein and Barr do not relate to whether the company issued refunds when requested, but whether so-called "welcome packets" were sent out, allegedly activating covert

---

[37] Mot. To Suppress at p. 19 [Doc. No. 78].

[38] See id. at p. 19-20.

[39] See id. at p. 21.

[40] U.S. v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993).

charges to customers. The affidavits offer enough information for a magistrate judge to find "indicia of probability" that further investigation of GoInternet records would produce evidence of criminal activity.

Once again employing the "totality of the circumstances" standard, the Court finds that the affidavits supporting the warrants at issue offered a "substantial" basis that criminal activity had occurred and supporting evidence could be found.

### C.    Despite the lapse of time between warrants, the information in the supporting affidavits was not stale.

Defendants argue that the information contained in the 2006 and 2007 affidavits was the same as in the original affidavit supporting the first warrant in 2004 and had lost its effectiveness to show probable cause, or was "stale." While the information is nearly identical, the Government demonstrates that it was supplemented where necessary, such as the addition of information from CW 2 that Saferstein had directed members of the company to move business records.[41]

Regardless, "age alone does not determine staleness" of information supporting the probable cause to issue a warrant.[42] In considering the probable cause for a warrant, courts must take into account the length of the criminal activity, the nature of the crime, and the items to be seized.[43] If the suspected criminal activity is of a "protracted and continuous nature and passage of time becomes less significant."[44]

---

[41] See Aff. Supporting October 2004 Warrant, ¶ 52-59.

[42] U.S. v. Williams, 124 F.3d 411, 420 (3d Cir. 1997).

[43] U.S. v. Tehfe, 124 F.2d 1114, 1119 (3d Cir. 1983).

[44] Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents, 307 F.3d at 148.

The cramming scheme Defendants are accused of orchestrating allegedly persisted for a number of years and determining the extent and exact consequences of the alleged scheme should be considered when assessing probable cause for the warrant. Moreover, since GoInternet ceased business operations in 2004, the nature of the alleged crimes had not changed over the two years in which warrants were initially issued. Information in the later affidavits needed to be updated as to the location of evidence, if such had changed, and it was.  Moreover, the evidence in this case consists primarily of voluminous documents, both hard copy and electronically stored, not material goods with an expiration date or easily disposed of objects.

The Court finds that due to the nature and timing of the alleged crimes, the information supporting the warrants in question does not negate, and in fact, supports a finding of probable cause.

D.      **The evidence should not be suppressed due to the "good faith exception."**

The "good faith" exception states that suppression is "inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority."[45]  The "good faith exception," leaves the decision of whether probable cause supports a warrant in the hands of the magistrate judge, and shows that the courts do not expect police and other law officers to make *ad hoc* judgments about whether a magistrate judge's decision was legally sound. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.  Once a warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.  Penalizing the officer for the magistrate's error, rather than his own, cannot logically

---

[45] U.S. v. Williams, 3 F.3d 69, 74 (3d. Cir. 1993).

contribute to the deterrence of Fourth Amendment violation."[46]

There are only four situations in which the "good faith exception," does not apply, and the Court finds none of them present with regard to the issuance of each of the eight warrants included in the instant motion. There is no indication that the affidavit presented to the magistrate judges was recklessly or deliberately false,[47] nor has any issuing authority failed to evaluate the warrants in a detached and appropriate manner.[48] None of the warrants failed to particularize the place to be searched,[49] nor were the affidavits "so lacking in indicia of probable cause as to render the official belief in its existence entirely unreasonable."[50]

The law officers who executed the searches permitted by the eight warrants in question were presented with no reason to believe that they were deficient in any way and conducted the search in the belief that sufficient probable cause had been shown. Although sufficient probable cause has been established for all eight warrants, in the alternative, the Court finds that the "good faith exception," applies and that the evidence produced as a result of the searches authorized by those warrants remains admissible at trial.

## IV.   CONCLUSION

---

[46] U.S. v. Leon, 468 U.S. 897, 921 (1984).

[47] See Franks v. Delaware, 438 U.S. 154, 157 (1978).

[48] See Lo Ji Sales, Inc. v. New York, 442 U.S. 319 (1979).

[49] Massachusetts v. Sheppard, 468 U.S. 981, 982 (1984).

[50] Brown v. Illinois, 422 U.S. 590, 610-11 (1974).

15

The Court hereby denies Defendant's Motion to Suppress. An appropriate Order follows.